UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| NORTHEAST UTILITIES SERVICE COMPANY and THE CONNECTICUT LIGHT AND POWER COMPANY,<br><br>Plaintiffs,<br>v.<br><br>ST. PAUL FIRE AND MARINE INSURANCE COMPANY and UTICA MUTUAL INSURANCE COMPANY,<br><br>Defendants. | 3:08-CV-01673 (CSH) |

**RULING ON MOTION TO ALTER OR AMEND JUDGMENT**

HAIGHT, Senior District Judge:

I.  **Introduction and Relevant Facts**

On July 12, 2012, the Court issued a Ruling on Cross-Motions for Summary Judgment (the "Ruling") [Doc. 77] in this action, granting summary judgment against the complaint filed by plaintiffs Northeast Utilities Service Company and The Connecticut Light and Power Company. On August 9, 2012, Plaintiffs filed a motion labeled "Rule 59(e) Motion to Alter or Amend Judgment Or, In the Alternative, Rule 52(a)(5), 52(a)(6) and/or 52(b) Motion RE: Findings" (the "Motion") [Doc. 79].  The Court denies the Motion, but takes this opportunity to clarify the two relevant sentences in the Ruling.

The Court presumes familiarity with the Ruling, and provides here only those facts that are relevant to this decision.  Plaintiffs filed the present action seeking a declaratory judgment and compensatory damages from defendants St Paul Fire and Marine Insurance Company and Utica

1

Mutual Insurance Company based on their interpretation of the insurance policies (the "Policies") they issued to American Electrical Testing Co. (AET). Plaintiffs alleged that they are entitled to defense and indemnity under the Policies in connection with two underlying bodily injury actions, filed by Marlyn Anchundia and Scott Schmukler respectively. The Court held that the Policies do not provide coverage to Plaintiffs for their defense and indemnity in those actions.

In support of their position, Plaintiffs filed a copy of a contract between themselves and AET (the "Contract").[1] According to Plaintiffs, under the Contract, AET took on certain obligations with respect to obtaining insurance coverage in which Plaintiffs would be named as additional insureds. Plaintiffs alleged that, "[i]n accordance with the Contract requirements," AET submitted to them a Certificate of Liability Insurance identifying the Policies. Memorandum of Law in Support of Plaintiffs' Motion for Summary Judgment on All Counts of the Third Amended Complaint [Doc. 40] at 3. In other words, it is clear that Plaintiffs assert that AET acquired the Policies in connection with its obligations under the Contract.

Plaintiffs now explain that they have filed an action against AET in the Connecticut Superior Court (the "State Action"), in which they allege, *inter alia*, that AET breached the Contract by failing to provide the coverage required under its insurance provisions. Their allegation in the State Action cannot be that AET failed to acquire the Policies, as that would contradict their repeated allegations in the pleadings and briefs in this action. *See, e.g.,* Third Amended Complaint [Doc. 29], Count One ¶¶ 11-12. It appears that they are alleging rather that AET's acquisition of the Policies did not constitute complete or sufficient compliance with the Contract's insurance requirements.

---

[1] A copy of the Contract is attached to the Affidavit of Linda G. Bennett [Doc. 48] as Continued Exhibit A.

Plaintiffs observe that AET has filed, in the State Action, a Motion for Continuance, in which it requests an opportunity to file for summary judgment.[2] AET asserted in that Motion that the Ruling in this action resolves, for the purposes of the State Action, Plaintiffs' allegation that "the additional insured status [AET] procured was not in compliance with the contractual clauses." Motion for Continuance at 2. AET based this statement on its interpretation of two sentences in this Court's Ruling, discussed in detail *infra*. Plaintiffs, concerned that the Ruling may be taken as settling an important issue in the State Action, filed the present Motion.

**II.     Discussion**

While the Funds make reference to several of the Federal Rules of Civil Procedure, the Court takes the Motion as a motion under Rule 52(b). The Funds do not seek to alter or amend the Judgment itself [Doc. 78], which makes no mention of the issues in question. Thus, Rule 59(b), which applies only to judgments, cannot be the basis for this motion. The other two rules cited, Rules 52(a)(5) and (6), refer to evidentiary matters, which are not at issue here.

Under Rule 52(b), "[o]n a party's motion filed no later than 28 days after the entry of judgment, the court may amend its findings–and may amend the judgment accordingly." A motion for amended or additional findings under Rule 52(b) is only granted when the moving party can show manifest errors of law or fact, or newly discovered evidence. *Bissell-Wisniowski ex rel. Estate of McConnell-Bissell v. Milford Council of Aging*, No. 3:03CV1252, 2004 WL 2634455, at *1 (D.Conn. Nov. 16, 2004).

The sentences at issue here, however, were not "findings." To the extent that they bear on

---

[2] A copy of the Motion for Continuance is attached as Exhibit C to the Affidavit of Maureen Danehy Cox [Doc. 79-3 pages 50-55].

the issue of AET's compliance with its obligations, they were dicta.

A "dictum" or "obiter dictum" is a "judicial comment made during the course of delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential (though it may be considered persuasive)." *U.S. v. Morgan*, 380 F.3d 698, 702 n. 3 (2d Cir. 2004), quoting *Black's Law Dictionary* 1100 (7th ed. 1999). When an observation had no role in the judgment, it cannot be characterized as part of the holding. *Id.* A "holding" is a court's "determination of a matter of law pivotal to its decision; a principle drawn from such a decision." *Cal. Pub. Emps.' Ret. Sys. v. WorldCom, Inc.*, 368 F.3d 86, 107 n. 19 (2d Cir. 2004), quoting *Black's Law Dictionary* 737 (7th ed. 1999). If a point of law "might have been decided either way without affecting any right brought into question, then, according to the principles of the common law, an opinion on such a question is not a decision." *Jimenez v. Walker*, 458 F.3d 130, 142-43 (2d Cir. 2006), quoting *Carroll v. Lessee of Carroll*, 57 U.S. 275, 286-87 (1853).

The first sentence in question comes from the Ruling's summary of relevant facts: "AET complied with this contractual insurance requirement by acquiring two policies (collectively, the 'Policies') from Defendants." Ruling at 2. That purely descriptive sentence references the link between the Policies and the Contract; the existence of such a link has not been in dispute in this action. The Court did not make any assertions about whether AET, in acquiring the Polices, completely or adequately fulfilled its obligations. The word "complied" in this context cannot reasonably be read to mean "complied with all of its obligations under the insurance provisions of the Contract."

Although the Court did not, in this sentence, make any assertion about the scope of AET's obligations under the Contract or the degree to which it complied with them, if such an assertion *had*

been made, it would certainly have been dictum. Those issues were not before the Court. The issue before the Court was whether the Policies provide coverage to Plaintiffs in connection with the Anchundia and Schmukler actions. Regardless of what coverage AET should have acquired under the terms of the Contract, what mattered for the Ruling was that the coverage that it in fact acquired did not cover the Anchundia and Schmukler actions.

The second sentence in question comes from the section of the Ruling in which the Court explained that the Utica Policy does not protect Plaintiffs against their own conduct: "AET included additional-insured coverage in the Utica Policy to meet its undertaking in the Contract to protect Plaintiffs, but AET was not obliged to purchase insurance to protect Plaintiffs against their own conduct." Ruling at 14. The assertion about what AET was obliged to purchase was dictum. The Court's holding that the Utica Policy did not protect Plaintiffs against their own conduct was based on the language of the Utica Policy itself, specifically (1) the limitation of coverage to "your [AET's] acts or omissions" in Section 11(a)(1) of the General Liability Extension Endorsement, and (2) the "independent acts" exclusion in Section 11(c)(1) of the Endorsement. Ruling at 11-17. It was not based on AET's obligations under the Contract.

Because that sentence was, in the Second Circuit's language quoted *supra*, "unnecessary to the decision in the case and therefore not precedential," it was dictum. What was at issue in the Ruling was the scope of the coverage in the Policies, not what coverage AET should have obtained.

Nothing in the Ruling constitutes a finding on the scope of AET's obligations under the insurance provisions of the Contract, or the completeness or adequacy of its compliance with those provisions. Thus, the Ruling does not contain any "finding" on this subject that the Court might alter, and the Motion must be denied.

### III.     Conclusion

The Motion [Doc. 79] is DENIED because there are no relevant findings to alter. Nevertheless, the Court takes this opportunity to clarify the Ruling. The Ruling does not contain any holding or finding about the scope of AET's obligations under the Contract or the degree of its compliance with those obligations.

It is SO ORDERED.

Dated: New Haven, Connecticut
          December 18, 2012

                                                     */s/ Charles S. Haight, Jr.*
                                                  Charles S. Haight, Jr.
                                                  Senior United States District Judge